1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPRINT NEXTEL CORPORATION, et al., | Case No.  1:13-cv-01174-AWI-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT BE PARTIALLY GRANTED |
| v. | |
| AARON SIMON WELCH, | ECF NO. 18 |
| Defendant. | OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

On October 30, 2013, Plaintiffs Sprint Nextel Corporation and Sprint Communications Company, L.P. ("Plaintiffs" or "Sprint") filed a motion for default judgment.  (ECF No. 18.) The motion was referred to the undersigned magistrate judge for findings and recommendations pursuant to 28 U.S.C. § 636(b).

The Court finds it appropriate for Plaintiff's motions to be submitted upon the record and briefs on file without need for oral argument.  See Local Rule 230(g).  For the reasons set forth below, the Court recommends that Plaintiffs' motion for default judgment be partially granted.

### I.

### BACKGROUND

Plaintiffs filed the complaint in this action on July 26, 2013.  (ECF No. 1.)  Plaintiffs' complaint seeks damages and injunctive relief against Defendant Aaron Simon Welch d/b/a The

1

Cell Cycle ("Defendant") for an alleged "Bulk Handset Trafficking Scheme."  Plaintiffs allege that Defendant and other co-conspirators acquired subsidized phones from Sprint and resold them to others.  Specifically, Plaintiffs allege that Defendant purchases Sprint phones in bulk quantities from "runners" and "credit mules" and instructed them on how to defraud Sprint to acquire phones from Sprint in bulk quantities.

Plaintiffs allege that Defendant purchased phones from Sprint directly and resold them. Additionally, Plaintiffs allege that Defendant published advertisements directed at third party co-conspirators/prospective sellers about purchasing iPhones to sell to Defendant.  These advertisements also invited prospective sellers to contact Defendant about how to easily acquire ten brand new iPhones to resell to Defendant.

Plaintiffs allege that Defendant instructs prospective sellers to open a new Sprint account and activate ten phone lines, buying a brand new iPhone for each line.  Defendant further instructs the prospective seller to purchase insurance coverage on each iPhone.  The prospective seller then sells the initial ten iPhones to Defendant and files insurance claims on those ten iPhones, by falsely claiming they were lost or stolen, to receive an additional ten iPhones.  The prospective seller sells those ten iPhones, makes another set of insurance claims to receive another ten iPhones, ultimately selling a total of thirty iPhones to Defendant.  The prospective seller then cancels the ten phone lines, allows the accounts to lapse, or keeps the accounts open until they are eligible to receive new phones.

Plaintiffs assert sixteen claims against Defendant for: 1) breach of contract, 2) unfair competition (common law), 3) tortious interference with business relationships, 4) civil conspiracy, 5) unjust enrichment, 6) conspiracy to induce breach of contract, 7) common law fraud, 8) fraudulent misrepresentation, 9) trafficking in computer passwords (18 U.S.C. § 1030(a)(6)), 10) unauthorized access (18 U.S.C. § 1030(a)(5)(C)), 11) unauthorized access with intent to defraud (18 U.S.C. § 1030(a)(4)), 12) federal trademark infringement (15 U.S.C. § 1114), 13) federal common law trademark infringement and false advertising (15 U.S.C. § 1125(a)(1)(A) and (B)), 14) contributory trademark infringement, 15) conversion, and 16) unfair competition (Cal. Bus. & Prof. Code § 17200, et seq.)

1    The hearing on Plaintiffs' motion took place on December 4, 2013.  After the hearing, the

2    Court asked Plaintiffs for additional briefing on issues relating to the motion and continued the

3    matter to January 8, 2014 for further hearing.  Plaintiffs filed a supplemental brief on December

4    24, 2013.  (ECF No. 25.)

5                                                    **II.**

6                        **LEGAL STANDARDS FOR DEFAULT JUDGMENT**

7    Entry of default judgment is governed by Federal Rule of Civil Procedure 55(b), which

8    states, in pertinent part:

> (2)  By the Court.  In all other cases, the party must apply to the
> court for a default judgment.  A default judgment may be entered
> against a minor or incompetent person only if represented by a
> general guardian, conservator, or other like fiduciary who has
> appeared.  If the party against whom a default judgment is sought
> has appeared personally or by a representative, that party or its
> representative must be served with written notice of the application
> at least 7 days before the hearing.  The court may conduct hearings
> or make referrals—preserving any federal statutory right to a jury
> trial—when, to enter or effectuate judgment, it needs to:
> (A)  conduct an accounting;
> (B)  determine the amount of damages;
> (C)  establish the truth of any allegation by evidence; or
> (D)  investigate any other matter.

17   Upon entry of default, the complaint's factual allegations regarding liability are taken as

18   true.  Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977); Microsoft Corp. v.

19   Nop, 549 F. Supp. 2d 1233, 1235 (E.D. Cal. 2008).  However, the complaint's factual allegations

20   relating to the amount of damages are not taken as true.  Geddes, 559 F.2d at 560.  Accordingly,

21   the amount of damages must be proven at an evidentiary hearing or through other means.

22   Microsoft Corp., 549 F. Supp. 2d at 1236.  Per Federal Rule of Civil Procedure 54(c), "[a]

23   default judgment must not differ in kind from, or exceed in amount, what is demanded in the

24   pleadings."

25   The Court's decision whether to enter a default judgment is discretionary.  Eitel v.

26   McCool, 782 F.2d 1470, 1471 (9th Cir. 1986).  Factors that the Court may consider in exercising

27   that discretion include (1) the possibility of prejudice to the plaintiff, (2) the merits of the

28   plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake

1    in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default

2    was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil

3    Procedure favoring decisions on the merits.  Id. at 1471-72.  "The general rule of law is that upon

4    default the factual allegations of the complaint, except those relating to the amount of damages,

5    will be taken as true."  Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977)

6    (citations omitted).

7                                                   **III.**

8                                             **DISCUSSION**

9          **A.    Partial Default Judgment**

10         As an initial matter, the Court requested briefing on the issue of whether the Court has

11   authority to enter a partial default judgment as to liability and as to a permanent injunction while

12   leaving deferring on the issue of damages.  The Ninth Circuit has impliedly endorsed the practice

13   of entering partial default judgment.  See Dreith v. Nu Image, Inc., 648 F.3d 779, 781 (9th Cir.

14   2011) ("...the district court entered default judgment against them with respect only to liability,

15   but deferred ruling on damages pending further briefing and evidentiary submissions.")

16   Accordingly, the Court finds it appropriate to enter partial default judgment on certain issues

17   while leaving open the question of damages.

18         **B.    Applicability of the Eitel Factors**

19         In determining whether to exercise its discretion to enter default judgment, the Court

20   analyzes the seven Eitel factors.

21         1.    Possibility of Prejudice to the Plaintiff

22         Potential prejudice to Plaintiffs favors granting a default judgment.  If default judgment

23   were denied, Plaintiffs would likely be without other recourse for recovery.  See Microsoft

24   Corp., 549 F. Supp. 2d at 1236-37; PepsiCo, Inc. v. California Security Cans, 238 F. Supp. 2d

25   1172, 1177 (C.D. Cal. 2002).  Accordingly, this factor weighs in favor of entry of default

26   judgment.

27   / / /

28   / / /

2.   <u>The Merits of Plaintiffs' Substantive Claims and the Sufficiency of Plaintiffs'</u>
<u>Complaint</u>

For the reasons set forth below, Plaintiffs' claims have merit and the Complaint states sufficient allegations supporting those claims.

a.   *Breach of Contract Claim*

Plaintiffs' first claim against Defendant is for breach of contract.  The elements of a claim for breach of contract are: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. <u>CDF Firefighters v. Maldonado</u>, 158 Cal. App. 4th 1226, 1239 (2008).

Plaintiffs allege that the Terms and Conditions included with Sprint phones constitute a valid, binding contract between Sprint and Defendant.  Plaintiffs further allege that Defendant violated the terms of those contracts by failing to pay monthly service charges, failing to pay early termination fees, failing to activate the phones on the Sprint network, reselling the phones, and using the phones for purposes that could damage Sprint.

With respect to the phones allegedly purchased directly by Defendant from Sprint, Plaintiffs state a cognizable claim for breach of contract.  Plaintiffs allege that Defendant breached the terms of the sales agreement by failing to pay monthly service charges, failing to pay early termination fees, failing to activate the phones on the Sprint network, reselling the phones and using the phones for purposes that could damage Sprint.

Since Plaintiffs allege sufficient facts to support a breach of contract cause of action, this factor weighs in favor of entry of default judgment.

b.   *Trademark Infringement, False Advertising and Unfair Competition Claims*[1]

Plaintiffs assert a variety of trademark related claims.  To establish a trademark infringement claim under the Lanham Act, the plaintiff must establish that the defendant is using a mark confusingly similar to plaintiff's valid, protectable trademark.   <u>Brookfield</u>

---

[1] In their brief in support of their motion for default judgment, Plaintiffs discuss their trademark claims, false advertising claims and unfair competition claims (Counts 2, 12-14 and 16 in the complaint) collectively without distinguishing between them.  Cases also analyze trademark claims and unfair competition claims together.  <u>See,</u> <u>e.g.,</u> <u>Sebastian Intern., Inc. v. Longs Drug Stores Corp.</u>, 53 F.3d 1073, 1074 (9th Cir. 1995).

1  Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999).

2  However, "the resale of genuine trademarked goods generally does not constitute

3  infringement." SoftMan Products Co., LLC v. Adobe Systems, Inc., 171 F. Supp. 2d 1075, 1092

4  (C.D. Cal. 2001); see also NEC Electronics v. CAL Circuit Abco, 810 F.2d 1506, 1509 (9th Cir.

5  1987) ("Trademark law generally does not reach the sale of genuine goods bearing a true mark

6  even though such sale is without the mark owner's consent."). The "first sale" rule provides

7  limitations on a trademark owner's ability to prohibit resale of trademarked products:

8
        Since 1924, courts have recognized a basic limitation on the right
9       of a trademark owner under the Lanham Act to control the
        distribution of its own products. Beginning with Prestonettes, Inc.
10      v. Coty, 264 U.S. 359, 44 S. Ct. 350, 68 L.Ed. 731 (124), courts
        have consistently held that, with certain well-defined exceptions,
11      the right of a producer to control distribution of its trademarked
        product does not extend beyond the first sale of the product.
12      Resale by the first purchaser of the original article under the
        producer's trademark is neither trademark infringement nor unfair
13      competition.

14  Sebastian Intern., Inc. v. Longs Drug Stores Corp., 53 F.3d 1073, 1074 (9th Cir. 1995).

15  On the other hand, the "first sale" doctrine does not apply when "the reseller's conduct

16  [goes] beyond the mere resale of the trademarked goods." Id. at 1076. A reseller may be liable

17  for trademark infringement if "the reseller used the trademark in a manner likely to cause the

18  public to believe the reseller was part of the producer's authorized sales force or one of its

19  franchisees." Id. Other cases impose liability "when an alleged infringer sells trademarked

20  goods that are materially different than those sold by the trademark owner." SoftMan Products

21  Co., LLC, 171 F. Supp. 2d at 1092.

22  Plaintiffs alleged sufficient facts to state cognizable trademark and unfair competition

23  claims because Plaintiffs allege that Defendant sold phones bearing the Sprint trademark that

24  were materially different from the same phones as they are sold by Sprint. Plaintiffs allege that

25  the phones sold by Defendant are "unlocked" to operate on competitors' wireless networks.

26  Moreover, Plaintiffs allege that the process of unlocking and reselling the phones voids the

27  manufacturer's warranty. Plaintiffs allege that Defendant caused consumer confusion by leading

28  purchasers to believe that they are purchasing genuine Sprint phones with all the attendant

6

benefits, when in actuality they are not.  Accordingly, the Court finds that Plaintiffs' complaint states cognizable trademark and unfair competition claims, which weighs in favor of entry of default judgment on these claims.

   c. *Unjust Enrichment Claim*

  There is a split in authority among California courts over whether "unjust enrichment" is regarded as a cause of action.  <u>See</u> <u>Levine v. Blue Shield of California</u>, 189 Cal. App. 4th 1117, 1138 (2010) (discussing split in authority).  Courts that recognize a cause of action for "unjust enrichment" regard the cause of action as having two elements: (1) the receipt of a benefit and (2) the unjust retention of the benefit at the expense of another.  <u>Peterson v. Cellco Partnership</u>, 164 Cal. App. 4th 1583, 1593 (2008).  Courts that do not recognize a separate cause of action for "unjust enrichment" regard such claims as synonymous with the California cause of action for restitution.  <u>Durell v. Sharp Healthcare</u>, 183 Cal. App. 4th 1350, 1370 (2010).  Under a cause of action seeking restitution, restitution may be awarded if a benefit is received by a person under circumstances such that it would be unjust for the person to retain it.  <u>Id.</u>

  With respect to the phones Defendant acquired directly from Sprint, Plaintiffs state a cognizable claim for unjust enrichment/restitution.  Plaintiffs allege that Defendant received a benefit from Plaintiff in the form of a phone provided at subsidized prices under the expectation that Defendant would maintain service with Sprint and pay monthly service charges.  Plaintiffs further allege that it would be unjust if Defendant could retain the subsidized phone without paying the monthly service charges.  Accordingly, the Court finds that Plaintiffs' complaint states a cognizable unjust enrichment/restitution claim, which weighs in favor of entry of default judgment.

   d. *Civil Conspiracy*

  Under California law, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."  <u>Applied Equipment Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal. 4th 503, 510-11 (1994).  In other words, by alleging the existence of a conspiracy, liability for the underlying tort can extend beyond the immediate

1    tortfeasors to the co-conspirators who may not otherwise be liable.  However, "[s]tanding alone,

2    a conspiracy does no harm and engenders no tort liability.  It must be activated by the

3    commission of an actual tort."  Id. at 511.

4         The elements of a civil conspiracy are: (1) the formation and operation of conspiracy, (2)

5    wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful

6    conduct.  Id. at 511; Kidron v. Movie Acquisition Group, 40 Cal. App. 4th 1571, 1581 (1995).

7    Plaintiffs have alleged the elements of a civil conspiracy: Plaintiffs allege that Defendant

8    conspired with third parties to fraudulently obtain iPhones from Sprint.  Accordingly, Defendant

9    is liable on the other claims asserted by Plaintiffs in their Complaint that were committed by co-

10    conspirators.

11         e.     *Conspiracy to Induce Breach of Contract*[2]

12         Plaintiffs also allege that Defendant unlawfully induced third parties to breach their

13    contracts with Sprint.  Under California law, the elements of tortious interference with contract

14    are: "(1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of this

15    contract, (3) defendant's intentional acts designed to induce a breach or disruption of the

16    contractual relationship, (4) actual breach of disruption of the contractual relationship, and (5)

17    resulting damage."  Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126

18    (1990).

19         Plaintiffs allege that third party co-conspirators entered into contracts with Sprint to

20    purchase phones, that Defendant was aware of these contracts, Defendant induced the third

21    parties to breach by reselling the phones and filing false insurance claims and Plaintiffs were

22    damaged as a result.  Accordingly, Plaintiffs state a cognizable claim for tortious interference

23    with contract and this weighs in favor of entry of default judgment.

24         f.     *Tortious Interference with Business Relationships and Prospective Advantage*

25         Plaintiffs assert a claim for tortious interference with business relationships.  "The

26    elements of the tort of interference with a prospective business advantage are: (1) an economic

27

28    [2] Although Plaintiffs titled their cause of action "Conspiracy to Induce Breach of Contract," the actual claim appears to be for tortious interference with contract.

8

relationship between plaintiff and some third person containing the probability of future economic benefit to the plaintiff, (2) knowledge by the defendant of the existence of the relationship, (3) intentional acts on the part of defendant designed to disrupt the relationship, (4) actual disruption of the relationship, and (5) damages to the plaintiff proximately caused by the acts of defendant." A-Mark Coin Co. v. General Mills, Inc., 148 Cal. App. 3d 312, 323 (1983).

Plaintiffs allege that an economic relationship exists between (1) Sprint and its authorized retailers and dealers, as well as between (2) Sprint and its customers, with the probability of future economic benefit to Plaintiffs in the form of sales and service contracts sold to customers. Plaintiffs further allege that Defendant knew of these relationships and intentionally disrupted them by purchasing phones in bulk, which resulted in stock shortages for popular phones that caused potential customers to purchase phones and plans from Sprint's competitors. Based on these factual allegations, Plaintiffs state a cognizable claim for tortious interference with business relationships and this weighs in favor of entry of default judgment.

g.  *Fraud*

Plaintiffs assert a claim for fraud. "The elements of fraud ... are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) (internal quotations omitted).

Plaintiffs allege that Defendant, along with other co-conspirators, made misrepresentations to Sprint when entering into purchase contracts. Plaintiffs allege that Defendant and his co-conspirators represented that they would comply with the terms and conditions of the contractual sales agreement knowing that they would not comply. Further, Plaintiffs allege that Defendant and his co-conspirators made false representations to Sprint in their insurance claims by claiming that phones were stolen when in fact they were sold. Based on these factual allegations, Plaintiffs state a cognizable claim for fraud and this weighs in favor of entry of default judgment.

/ / /

/ / /

h.      *Computer Fraud and Abuse Act*

Plaintiffs assert several claims under the Computer Fraud and Abuse Act.  Counts nine through eleven of the Complaint allege violations of 18 U.S.C. § 1030(a)(4), 1030(a)(5)(C), and 1030(a)(6).  These statutes state:

> (a)      Whoever--
> ...
> (4)      knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period;
> (5)
> ...
> (C)      intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.
> (6)      knowingly and with intent to defraud traffics (as defined in section 1029) in any password or similar information through which a computer may be accessed without authorization, if—
> (A) such trafficking affects interstate or foreign commerce; or
> (B) such computer is used by or for the Government of the United States;

Thus, Section 1030(a)(4) prohibits fraudulent access to a protected computer to obtain anything of value, Section 1030(a)(5)(C) prohibits unauthorized access to a protected computer causing damage and loss, and Section 1030(a)(6) prohibits the trafficking of passwords.

Plaintiff alleges that Defendant violated the Computer Fraud and Abuse Act by acquiring phones through fraud and gained unauthorized access by 1) unlocking the phones and 2) turning on the phones and thereby accessing Sprint's wireless service network and billing network. Plaintiff further alleges that Defendant traffics in using the proprietary codes stored on the phones which access Sprint's network and selling those codes along with the phones.  Based upon these factual allegations, Plaintiffs appear to state cognizable claims under the Computer Fraud and Abuse Act and this weighs in favor of entry of default judgment.

3.      The Sum of Money at Stake in the Action

Since Plaintiffs do not seek any sum of money at this time, this factor weighs in favor of entry of default judgment.

/ / /

4.      The Possibility of a Dispute Concerning Material Facts

In this case, Defendant has failed to appear and defend against Plaintiffs' allegations. Accordingly, no genuine dispute of material facts would preclude entry of default judgment.  See PepsiCo, Inc. v. California Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  This factor weighs in favor of entry of default judgment.

5.      Whether Default was Due to Excusable Neglect

There is no indication that default was due to excusable neglect.  Accordingly, this factor weighs in favor of entry of default judgment.

6.      The Policy Favoring Decisions on the Merits

The seventh Eitel factor always weighs against entry of default judgment.  However, the preference to decide cases on their merits does not preclude the Court from entering default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.

7.      Entry of Default Judgment is Proper

For the reasons discussed above, six of the seven Eitel factors weigh in favor of entry of default judgment.  Accordingly, the Court finds that default judgment is appropriate.

**C.      Relief Requested**

Plaintiffs request entry of default judgment only as to liability and as to their request for a permanent injunction.  Plaintiffs do not request entry of default judgment as to damages, and instead request that they be given an opportunity to conduct discovery to ascertain their damages.

1.      Default Judgment as to Liability

As discussed above, Plaintiff's Complaint appears to state valid claims.  See discussion, supra Part III.B.2.  Accordingly, the Court finds entry of default judgment as to liability appropriate.

2.      Default Judgment as to Plaintiffs' Request for a Permanent Injunction

Plaintiffs request a permanent injunction.  Plaintiff's Complaint specifically requested "permanent injunctive relief in favor of Plaintiffs and against Defendant enjoining Defendant from engaging in the unlawful practices described in this Complaint."  The [Proposed] Default Judgment and Permanent Injunction submitted by Plaintiffs along with their motion for default

judgment requested a permanent injunction enjoining Defendant from:

- purchasing, selling, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any Sprint Products;

- unlocking any Sprint Phones;

- accessing, altering, erasing, tampering with, deleting or otherwise disabling the software contained in any Sprint Phones;

- supplying Sprint Products to or facilitating or in any way assisting other persons or entities who Defendant knows or should know are engaged in the purchase or sale of Sprint Phones or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in Sprint Phones;

- supplying Sprint Phones to or facilitating or in any way assisting other persons or entitles who Defendant knows or should know are engaged in any of the acts prohibited under this Permanent Injunction, including, without limitation, the buying and/or selling of Sprint Phones; and

- knowingly using the Sprint Marks or any other trademark, service mark, trade name or trade dress owned or used by Sprint now or in the future, or that is likely to cause confusion with the Sprint Marks, without Sprint's prior written authorization.

A plaintiff seeking a permanent injunction must demonstrate that: (1) it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[3]   eBay Inc. v. MercExchange, LLC, 547 US 388, 391 (2006).

/ / /

---

[3] Plaintiffs argue that they need not demonstrate irreparable harm in connection with its claims under the Computer Fraud and Abuse Act because injunctive relief is authorized by statute upon demonstration of the violation of the statute.  Plaintiffs cite no authority in support of this proposition and nothing in the text of the statute suggests that irreparable injury need not be shown.  Moreover, courts have analyzed the irreparable injury requirement in the context of injunctive relief requests under the CFAA.  See, e.g., T-Mobile USA, Inc. v. Terry, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012).

As an initial matter, the Court notes that Plaintiffs have not submitted evidence that supports their request for a permanent injunction. Plaintiffs have submitted argument, but no declarations, documents, etc. that supports any of the four permanent injunction factors. "Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's *liability* are taken as true, with the exception of the allegations as to the amount of damages." PepsiCo, Inc. v. California Security Cans, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (italics added). Thus, plaintiffs must "prove-up" the amount of damages sought in the complaint. Geddes, 559 F.2d at 560. By analogy, plaintiffs must also "prove-up" their entitlement to other forms of relief, such as a permanent injunction. See Gucci America, Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 120-21 (S.D.N.Y. 2008); Western Supreme Buddha Ass'n Inc. v. Oasis World Peace and Health Foundation, No. 08-cv-1374 (TJM/DRH), 2010 WL 3488134, at *3 (N.D.N.Y. Aug. 30, 2010) ("A court may award an injunction, damages, and civil penalties on a default judgment. On default, however, the court does not accept as true allegations in the complaint regarding the relief sought by the plaintiff. Rather, the plaintiff is required to prove independently that it is entitled to the relief it requests.").

The Court finds permanent injunctive relief inappropriate due to the dearth of evidence in the record supporting such relief. It is worth noting that even the allegations of Defendant's misconduct are vague, especially when considering the fact that Plaintiffs should have access to records that would identify specific misconduct by Defendant. There are no concrete and specific allegations of any purchases Defendant made from Sprint, insurance claims filed by Defendant on Sprint phones, or purchases and insurance claims made by persons believed to have conspired with Defendant. Although Plaintiffs argue that Defendant disrupted the supply of phones to Sprint's distributors, there are no allegations or evidence of any specific disruption or shortage at any specific store or at any specific point in time. Nor are there any allegations or evidence of a specific instance of a customer expressing confusion over a phone bearing Sprint's trademark. Accordingly, there is little evidence supporting the conclusion that Plaintiffs' suffered irreparable injury, that remedies at law are inadequate, that the balance of hardships weighs in Plaintiffs' favor, or that the injunctive relief is in the public's interest.

Moreover, the requested injunctive relief appears to be overbroad. "Injunctive relief ... must be tailored to remedy the specific harm alleged. An overbroad injunction is an abuse of discretion." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1140 (9th Cir. 2009) (internal quotations and citations omitted). Plaintiffs seek to enjoin Defendant from innocuous activity such as "purchasing ... directly or indirectly, any Sprint Products," or "accessing ... the software contained in any Sprint Phones." Such an injunction would bar Defendant from even borrowing someone else's Sprint phone to make a phone call. Moreover, it would effectively bar Defendant's cell phone business from engaging in legal business transactions involving Sprint products. Enjoining "indirect" conduct also appears to be overbroad and vague. The balance of equities would not support such an overbroad injunction, as it would be unduly burdensome on Defendant with little benefit to Plaintiffs.

Based upon the foregoing, the Court recommends that Plaintiffs' request for entry of default judgment with respect to a permanent injunction be denied without prejudice to Plaintiffs' right to make a renewed request in a motion that addresses the issues identified above.

## IV.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the Court finds that entry of default judgment against Defendant on the issue of liability is appropriate. However, the Court finds that entry of default judgment as to a permanent injunction is not appropriate.

Accordingly, it is HEREBY RECOMMENDED that:

1.    Plaintiffs' motion for default judgment be PARTIALLY GRANTED;

2.    DEFAULT JUDGMENT be entered in favor of Plaintiffs and against Defendant on the issue of liability; and

3.    Plaintiffs' request for a permanent injunction be DENIED without prejudice.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with a copy, any party may file written objections

1  with the court and serve a copy on all parties.  Such a document should be captioned "Objections

2  to Magistrate Judge's Findings and Recommendation."   The Court will then review the

3  Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

4  failure to file objections within the specified time may waive the right to appeal the District

5  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6

7  IT IS SO ORDERED.

8    Dated:   **January 8, 2014**
                                            UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28